IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DERRICK CARR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-1299-CV-DPR |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

An Administrative Law Judge ("ALJ") denied Social Security Disability Insurance Benefits and Supplemental Security Income to Plaintiff Derrick Carr in a decision dated April 5, 2011 (Tr. 14-24). The Appeals Counsel denied review (Tr. 1-3). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. For the reasons set forth below, the decision of the Commissioner of Social Security is **AFFIRMED**.

FACTUAL BACKGROUND

Claimant Carr sought disability benefits alleging shoulder and kidney problems, and high blood pressure (Tr. 169). Carr alleged the onset of his disability date from January 1, 2008 (Tr. 90). He claimed past work as a bus driver, cook, general laborer, janitor, parking attendant, mail sorter, and assembly-line worker (Tr. 170).

*Medical Records*

Carr's medical records show that in 1999 he fractured his upper left arm in three places, which required surgical repair (Tr. 257-265). He complained of left shoulder pain again in

January 2009 (Tr. 197-201). A May 2009 orthopedic evaluation showed a significantly limited range of motion and tenderness on palpation in the left shoulder. An x-ray revealed chronic degenerative and old traumatic changes. Carr was diagnosed with osteoarthritis, and was given the option of a total shoulder replacement or shoulder fusion (Tr. 305-09).[1]

Carr's medical records also show that he complained of low back pain in May, June, and July 2007. A June 2007 MRI revealed bulging discs at L3-4, L4-5, and L5-S1, with neuroforaminal narrowing (Tr. 220-21).

In January 2009, Carr was diagnosed with bursitits of the right elbow. He experienced numbness in his right hand, pain and swelling in the right elbow, limited range of motion in the right elbow, and pain on palpation, but he showed a full range of motion in the right shoulder (Tr. 222-31). The records do not show additional complaints of right-elbow pain.

In October 2009, Carr saw a physician for wheezing, shortness of breath, cough, and sleepiness during the day. A pulmonary function study was performed, and Carr was diagnosed with uncontrolled severe persistent asthma and obstructive sleep apnea (Tr. 317-18). He was prescribed an inhaler and prednisone. On follow-up in January 2010, his asthma was described as "under good control." He was encouraged to quit smoking and continued on medications (Tr. 332-33).

Carr complained of rectal bleeding from 2007 through 2009; he underwent surgery for polyps in his colon in April 2009 (Tr. 170-84). Carr's medical records also showed some history of anxiety and chest pain (Tr. 214-17).

*Consultative Examination*

An agency consulting physician, Dr. Kala Danushkodi, evaluated Carr on June 17, 2010.

---

[1] The records do not show which surgical option, if either, Carr chose.

Dr. Danushkodi observed impaired fine motor skills in Carr's left arm, and a limited range of motion in his left shoulder. He found Carr's left shoulder weak, and his grasp limited to only 10 pounds. Dr. Danushkodi reported normal strength in the right arm (Tr. 347-48). He concluded:

> Based on my evaluation, the patient has moderate-to-severe disability of his left shoulder consistent with severe limitation of the left shoulder range of motion, weakness, and possible brachial plexus involvement. He should be restricted from using his left upper extremity for repetitive pushing, pulling, lifting or carrying activities. I estimate he can lift occasionally five pounds using his right upper extremity. There are no restrictions to sitting, standing, or walking with usual periodic breaks. He should be restricted from driving, prolonged traveling, and extreme weather changes.

(Tr. 349.)

*ALJ Hearing*

Claimant Carr appeared in person at a hearing before an Administrative Law Judge (ALJ) on March 18, 2011. He testified that he stopped working in 2008 because of shoulder pain, kidney problems, and asthma. He reported pain in and difficulty using his left shoulder. He stated that his left shoulder is "frozen" most of the time, causing him to drop things. He reported numbness in his left hand. He testified he could not lift anything with his left arm, and no more than 25 pounds with his right arm. He testified that he suffers from asthma and frequent shortness of breath, but he takes medications to control those symptoms. He reported that those medications make him sleepy. He also testified that both of his kidneys are failing. As a result, he must urinate frequently, up to once or twice an hour. He testified the frequent urination would interfere with his ability to work. Carr also testified that he reads at only a third-grade level, but he reported it has not limited his ability to work in the past (Tr. 27-42).

Carr's friend Diane Perkins testified at the hearing that Carr suffers from left shoulder pain, asthma, arthritis, and kidney failure. Perkins testified that sometimes Carr needs assistance combing his hair because he cannot lift his arm. She testified that some days he is stiff and he

3

can barely walk or move. Carr's daughter, Kelly Carr, testified at the hearing that her father suffers from shoulder pain and asthma. She testified that Carr sometimes has difficulty eating, and she sometimes has to shave him because his shoulder causes him too much pain. She reported that Carr cannot use his right arm well either because the pain from his left shoulder radiates to his chest and back (Tr. 43-48).

A vocational expert testified at the hearing regarding Carr's ability to work. She opined that someone of Carr's age, education, and work experience, who could lift or carry 10 to 20 pounds with his or her right arm; could sit for eight hours and stand and walk between four and six hours in an eight-hour day; could reach, handle, push, or pull with his or her right arm but never with his or her left arm; could never climb stairs, ramps, ladders, kneel, crouch, or crawl, but could occasionally balance and stoop; and would need to avoid unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes, and extreme heat or cold, would be able to work as a collator operator, a price marker, or an inserting machine operator. The vocational expert testified that inability to use the left arm would not preclude these types of work (Tr. 49-53).

*ALJ Opinion*

The ALJ rendered a decision denying benefits on April 5, 2011 (Tr. 14-24). The ALJ found that Carr had not engaged in substantial gainful activity since January 1, 2008, his alleged disability onset date. The ALJ found that Carr had the following severe impairments: history of left humeral fracture; left shoulder pain with adhesive capsulitis; history of bursitis in the right elbow; degenerative disc disease; asthma; obesity; gastroesophageal reflux disease; peptic ulcer

disease; and a history of colon cancer and rectal bleeding (Tr. 16).[2] The ALJ found, however, that Carr's impairments do not meet or medically equal an impairment or impairments listed in the regulations.

The ALJ found that Carr had the Residual Functional Capacity (RFC) to lift and carry ten to twenty pounds with his right arm, but not his left; to sit for six hours at a time and for a total of eight hours in an eight-hour day; to stand and walk for four hours at a time and for a total of four to six hours in an eight-hour day; to frequently use his right hand for reaching, handling, pushing, or pulling, but never his left; and to occasionally balance and stoop, but never kneel, crouch, crawl, or climb stairs, ramps, or ladders. The ALJ further found that Carr could not operate a motor vehicle and should avoid environments with unprotected heights, moving mechanical parts, humidity, wetness, temperature extremes of heat or cold, and pulmonary irritants such as dust, odors, or fumes.

In making this finding, the ALJ discounted the claimant's testimony that he must use the restroom hourly due to his kidney problems, that his medications make him sleepy, and that he must use a "breathing machine" five times per week for his asthma, because the allegations were not supported by any objective medical evidence (Tr. 19). The ALJ pointed out that Carr did not seek any ongoing treatment for bursitis in his right elbow. The ALJ gave significant weight to Dr. Danushkodi's determination of Carr's functional abilities, because they were consistent with Carr's medical records, except that the ALJ discounted Dr. Danushkodi's severe limitations on Carr's use of his right arm. Instead, the ALJ relied on Carr's own testimony that he could lift up to 25 pounds with his right arm.

---

[2]The ALJ found *not severe* Carr's hypertension, which is well-controlled with medication, and his anxiety, which does not cause more than mild limitations and has resulted in no episodes of decompensation (Tr. 17).

5

The ALJ further found inconsistencies between Carr's reported activities of daily living and the severe symptoms he described at the hearing, noting that Carr reported he could provide for his own personal care, perform yard work, shop for groceries, attend church, and wash dishes. The ALJ also noted that Carr's medical treatment had been "routine, infrequent, and conservative," which could indicate that his impairments are not as significant as he alleged. Finally, the ALJ considered Carr's sporadic work history and annual income, finding it likely that Carr would receive more per year in disability payments than income he had earned in 1995, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 (Tr. 21).

## LEGAL STANDARDS

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence, and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a

different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

*Credibility Determination*

In assessing a claimant's credibility, an ALJ must consider 1) the claimant's daily activities; 2) the duration, intensity, and frequency of pain; 3) the precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ is not required to explicitly discuss each *Polaski* factor, so long as the ALJ acknowledges and considers them before discounting a claimant's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). An ALJ may find a claimant's allegations not credible where there exist "inconsistencies in the record as a whole." *Id.* A court will defer to an ALJ's credibility determination "if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)).

Substantial evidence on the record as a whole supports the ALJ's determination that Carr's subjective complaints are not credible. The ALJ considered the factors set out in *Polaski,* including Carr's activities, pain, precipitating and aggravating factors, medications, functional limitations, work history, and available medical evidence. The ALJ specifically identified inconsistencies between Carr's testimony regarding his pain and his report that he is capable of performing yard work, grocery shopping, attending church, and washing dishes. The ALJ also noted the lack of medical records supporting Carr's complaints of kidney pain, causing frequent urination, and his asthma, and Carr's inconsistent work history. *See Ellis v. Barnhart*, 392 F.3d

7

988, 996 (8th Cir. 2005) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) ("a sporadic work history is relevant to the ALJ's credibility analysis")). In the Court's view, these constitute "good reasons" for discounting Carr's testimony regarding his subjective complaints. Thus, the Court finds no basis in the record to overturn the ALJ's credibility determination.

*RFC Determination*

An ALJ's RFC determination must be supported by some medical evidence. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). But the RFC determination "is not limited to considering medical evidence exclusively." *Cox*, 495 F.3d at 619. "Although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." *Ellis*, 392 F.3d at 994 (citing 20 C.F.R. § 404.1527(e)(2)).

Similarly, the ALJ's RFC determination is also based on substantial evidence. Carr argues that the ALJ's RFC calculation is flawed because the ALJ discounted the consulting physician's suggested restrictions on use of his right arm. The ALJ's opinion however, clearly explains that it adopted all of the findings of the consulting physician except for Carr's ability to use his right arm. The ALJ based his rejection of that restriction on Carr's own testimony that he was capable of lifting 25 pounds with his right arm. Moreover, the ALJ determined that Carr could not lift more than 20 pounds with his right arm. The ALJ sufficiently explained his reasons for giving controlling weight to the opinion of Dr. Danushkodi, and for discounting Dr. Danushkodi's restrictions on Carr's use of his right arm.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. Accordingly, the decision of the

Commissioner of Social Security should be affirmed.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED: February 22, 2013**

      /s/ *David P. Rush*
**DAVID P. RUSH**
**United States Magistrate Judge**